```
GERALD L. DAVIS & ASSOCIATES,   )
INC., d/b/a GDI, Inc.,          )
                                )
     Plaintiff,                 )
                                ) No. 3:04-0580
v.                              ) JUDGE ECHOLS
                                )
EDWARDS TELECOMMUNICATIONS,     )
INC., and BROADBAND TELE        )
COMMUNICATIONS, INC.,           )
                                )
     Defendants.                )
```

## MEMORANDUM

Pending before the Court are Defendant Edwards Telecommunications, Inc.'s Motion in Limine to Exclude the Expert Testimony of Billy Gadd (Docket Entry No. 61), Defendant Edwards Telecommunications, Inc.'s Motion in Limine to Exclude the Expert Testimony of Benny Woods (Docket Entry No. 62), Defendants' Motion in Limine to Preclude Plaintiff from Presenting Testimony Regarding Pre-Installation Testing of the Cable (Docket Entry No. 65), and Plaintiff Gerald L. Davis & Associates, Inc.'s Motions in Limine (Docket Entry No. 67), to which the parties have responded in opposition.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff Gerald L. Davis & Associates, d/b/a GDI, Inc. ("GDI"), Defendant Edwards Telecommunications, Inc. ("Edwards"), and Defendant Broadband Tele Communications, Inc. ("Broadband"),

1

were involved in a project to install approximately twenty-two miles of aerial fiber optic cable in Nashville, Tennessee, for American Fiber Systems ("AFS"), the owner of the fiber optic cable. AFS hired Viasys Utility Services, Inc., d/b/a Viasys ("Viasys") to serve as general contractor in Phase II of the Nashville project. Viasys hired Plaintiff GDI to install the fiber optic cable. GDI in turn hired two subcontractors to conduct the installation, Defendants Edwards and Broadband.

After the cable was installed and spliced, final testing revealed broken and bent fibers. AFS refused to accept the installation because it did not meet specifications. AFS also refused to allow GDI to make additional splices to replace the damaged cable. GDI removed three reels of the damaged cable and replaced it with new fiber optic cable.

According to the First Amended Complaint, Viasys and GDI incurred substantial costs for purchase and installation of replacement fiber optic cable. Viasys filed suit against GDI, and GDI agreed to a settlement in excess of $75,000. GDI then brought this action against its subcontractors, Edwards and Broadband, alleging claims for breach of contract, negligence, indemnification, and breach of warranty.

The Court denied Defendants' Joint Motion for Summary Judgment (Docket Entry No. 38) in a Memorandum and Order entered on

2

September 30, 2005. (Docket Entry Nos. 70 & 71.) The Court will now consider the Motions in Limine filed by the parties.

## II. ANALYSIS

### A. Motions in Limine to Exclude Plaintiff's Experts

Plaintiff intends to present at trial the expert and lay testimony of Clifford W. "Billy" Gadd and Calvin B. "Benny" Woods.

Mr. Gadd graduated from the Tennessee Institute of Electronics and studied Electrical Engineering at the University of Tennessee, although he did not obtain a degree. He has nearly twenty-five (25) years of experience in the design, aerial installation, splicing, and testing of various types of cable, including high-load fiber optic cable. He currently owns and operates a telecommunications services company.

Mr. Gadd is the former Vice President of Technical Services for GDI. His responsibilities included the creation of the technical division to complement GDI's existing construction services. He was also responsible for all aspects of GDI's fiber optic projects, and developed a fiber optics training course. He participated in, and was responsible for, the installation of the fiber optic cable at issue.

Mr. Gadd is expected to present lay testimony about his involvement with the Nashville fiber optics project as well as his expert opinion, based on his training and experience, that the damage discovered on the original reels 1, 6, and 7 was not due to

3

a manufacturing defect, but was caused by substandard construction practices utilized by the subcontractors, Edwards and Broadband, during the installation process.

Mr. Woods is a certified professional engineer who graduated from Texas Tech University with a degree in electrical engineering in 1970. He is currently Senior Consultant with Unified Building Sciences & Engineering ("UBSE"), an engineering firm, where he has been employed for six years. Since joining UBSE, Mr. Woods has been involved in more than one hundred (100) investigations into many different types of damaged fiber optic cable. He previously investigated damage to an 864-count ribbon fiber manufactured by Lucent, the same company that manufactured the 432-count ribbon fiber at issue in this case. He has also investigated damage to ribbon fiber optic cable ranging from 168- to 864-count. He has investigated both aerial and underground installation of fiber optic cable and investigated a separate matter involving aerial construction of high-count fiber optic cable in the Nashville area. These investigations involved a determination of the cause of damage and whether the repairs and repair costs were reasonable and necessary.

Prior to joining USBE, Mr. Woods worked in the electric utilities industry for almost thirty (30) years, with a focus on supervising and erecting underground and aerial electrical cable. In his work he became familiar with procedures necessary to install

4

and erect the cable without damage, including maintenance of the proper bending radius of the cable.

Mr. Woods was contacted by CNA Insurance Company to investigate the damage to the fiber optic cable at issue in this case. Mr. Woods is expected to testify, based on his own observations, knowledge, and experience, that inappropriate handling of the cable during the installation process caused the damage to the fiber optic cable.

Neither Mr. Gadd nor Mr. Woods has previously testified as an expert during federal trials or depositions, neither has published articles concerning damage to fiber optic cable, and neither has engaged in any scientific evaluation of damage to fiber optic cable that has been peer-reviewed. Consequently, Defendant Edwards seeks to exclude them from testifying as experts under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

The Court finds that Mr. Gadd and Mr. Woods may testify as expert witnesses at trial under Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), and First Tennessee Bank Nat'l Ass'n v. Barreto, 268 F.3d 319 (6th Cir. 2001). Those cases recognize that "the four specific factors utilized in Daubert may be of limited utility in the context of non-scientific expert testimony." Barreto, 268 F.3d at 334. While the Court does serve a gatekeeping function at trial, the reliability of proffered expert testimony

5

may be satisfied by the witness' personal knowledge or experience. Kumho Tire, 526 U.S. at 150.

In Barreto, the Sixth Circuit found the Daubert factors to be unhelpful in a case where the expert testimony was derived from the witness' own practical experiences through forty years in the banking industry. Barreto, 268 F.3d at 335. Opinions formed through such experience ordinarily do not "lend themselves to scholarly review or to traditional scientific evaluation." Id. (footnote omitted). In this case, both Mr. Gadd and Mr. Woods propose to testify as experts based on their years of experience in the installation of various forms of cable, including high-count fiber optic cable. As in Barreto, their opinions formed through their years of experience do not lend themselves to scholarly review or traditional scientific evaluation. Yet, their technical and/or specialized knowledge would likely assist the jury in understanding the case presented. Fed.R.Evid. 702.

The Court's fundamental objective must be to insure the reliability and relevancy of the expert testimony. Id. As in Barreto, the Court finds that Plaintiff will be permitted to present the expert testimony of Mr. Gadd and Mr. Woods, the reliability of which is satisfied by their years of relevant technical and specialized experience. See id. Accordingly, Defendant's motions in limine to exclude these witnesses from testifying as experts will be DENIED.

**B. Motion in Limine to Preclude Evidence on Pre-installation Testing**

The manufacturer of the fiber optic cable, Lucent/OFS, tested the cable for any defects before it left the factory. A "birth certificate" accompanying each reel from the factory to AFS certified that the cable was tested and no manufacturing defects were found. AFS shipped the reels to Viasys in Nashville, where they were stored in a secure warehouse.

Viasys hired a local Nashville company to test the fibers again for breaks or bends before the reels were taken from the warehouse into the field for installation. The testing process took about one week. The testing involved use of an Optical Time Dominion Reflectometer ("OTDR"). An OTDR test can be conducted at a frequency of 1310 or 1550 nanometers. The higher frequency is a more reliable test and shows different information than the lower frequency test. However, the OTDR test at 1310 frequency will disclose broken or dead fibers. The OTDR tests conducted for Viasys at the Nashville warehouse used the 1310 frequency.

Keith Storm, project engineer for Viasys, was personally present at the warehouse at times when the pre-installation testing was underway. He received from the testing company a "book of traces" and backup CDs, which showed the results of the testing on each one of the 432 fibers in each of the nine reels. According to Storm, the pre-installation testing was "clean." Storm forwarded the book of traces and the CDs to AFS. He did not keep copies. GDI pulled the manufacturer's "birth certificates" from the reels

7

and kept them. After the cable was installed and spliced, final OTDR bidirectional testing at both 1310 and 1550 nanometers revealed broken and bent fibers at a point in the cable located beyond five ninety-degree turns. Bends in the fibers were so severe that they were visible even on 1310 frequency. The testing at 1310 frequency prior to installation did not reveal such bends.

GDI's experts, Mr. Gadd and Mr. Woods, both testified they reviewed the results of the manufacturer's OTDR testing at 1310 and 1550 wavelengths and no manufacturing defects were present when the reels of cable left the factory. They also reviewed the pre-installation test results obtained by Viasys for two of the three reels that were damaged.

Defendants contend that permitting GDI to present evidence of the pre-installation testing at trial without introducing the test results themselves will constitute the admission of hearsay testimony and the violation of the best evidence rule. Fed.R. Evid. 1002. Defendants contend GDI lacks a witness who can testify regarding the authenticity of any pre-installation test results because GDI does not know the name of the company that performed the testing for Viasys.

GDI's experts, Mr. Gadd and Mr. Woods, however, testified at their depositions that they reviewed the manufacturer's test results, as well as the pre-installation test results obtained by

8

Viasys, for two of the three reels that were ultimately damaged. Under Federal Rule of Evidence 703,

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Thus, Mr. Gadd and Mr. Woods may testify about opinions based on facts or data even if the facts or data themselves are not admissible.

Further, Keith Storm of Viasys may testify as to what he personally knows. Mr. Storm testified at his deposition that he was present at the warehouse during the week the pre-installation testing on the fiber optic cable was performed. He personally received from the testing company a "book of traces" and backup CDs, which showed the results of testing on each one of the 432 fibers in each of the nine reels was "clean." He forwarded the book of traces and the CDs to AFS, but he did not keep copies. He will be permitted to testify to his personal observations and knowledge.

Accordingly, Defendants' motion in limine to preclude testimony concerning the pre-installation testing will be DENIED.

## C. GDI's Motions in Limine

GDI has made seventeen (17) motions in limine within one filed document. The Court will not repeat the entire substance of each motion in limine here, but rules as follows:

1. Evidence of insurance - To the extent Federal Rule of Evidence 411 bars the use of such evidence, the motion is GRANTED; to the extent the motion seeks exclusion of the evidence for some other purpose, such as proof of ownership, control, bias or prejudice, the motion is DENIED.

2. Evidence of offers to settle or compromise - The parties agree such evidence is excluded as stated in Federal Rule of Evidence 408, and therefore, the motion is GRANTED.

3. Evidence that the fiber optic cable had manufacturing defects - The Court RESERVES ruling until trial.

4. To bar expert testimony on behalf of Defendants - Because the Magistrate Judge previously granted Plaintiff's motion to strike and to bar Defendant's expert from testifying, the motion in limine is DENIED AS MOOT.

5. To bar any defense not raised in the Answer - The motion in limine is GRANTED to bar any defense not raised in the Answer or in the Joint Pretrial Order.

6. To bar evidence or argument that Plaintiff is asking for a greater amount of damages than Plaintiff expects to receive - This motion is vague and unclear and it is DENIED.

7. For sequestration of witnesses except for one representative for each party – The motion is GRANTED, Fed.R.Evid. 615; however, witnesses may be present in the courtroom after testifying if they will not be called as rebuttal witnesses.

8. To bar evidence on matters not previously disclosed – Because the motion is vague, the Court RESERVES ruling until trial.

9. To bar opinions and/or criticisms not raised in the disclosures of Defendant's expert witnesses – Because the Magistrate Judge previously granted Plaintiff's motion to strike and to bar Defendant's expert from testifying, the motion in limine is DENIED AS MOOT.

10. To bar Defendants from calling any witness not previously and timely diclosed – The Court RESERVES ruling until trial.

11. To bar Defendants from allowing any lay witness to offer expert testimony – Because the motion in limine is too broad, the Court RESERVES ruling until trial.

12. To bar evidence of the financial status of a party – The Court RESERVES ruling until trial.

13. To bar reference to the effect a verdict for Plaintiff would have on Defendant – Because the motion in limine is vague, the Court RESERVES ruling until trial.

14. To bar argument that jurors should place themselves in Defendants' shoes – Because Defendants agree such argument would be improper, the motion is GRANTED.

15. To bar Defendants from offering any testimony on whether purchase of replacement cable was necessary and reasonable - The Court RESERVES ruling until trial.

16. To bar reference to attorneys coming from "out-of-town" - Because Defendants do not oppose this motion in limine, the motion is GRANTED.

17. To bar Defendants from offering evidence on the amount of damages suffered by GDI - The Court RESERVES ruling until trial.

### III. CONCLUSION

For the reasons stated, Defendant Edwards' motions to exclude the expert testimony of Plaintiff's experts, Mr. Gadd and Mr. Woods, will be DENIED.  Defendants' motion in limine to preclude testimony concerning pre-installation testing of the fiber optic cable will be DENIED.  Plaintiff's seventeen motions in limine will be GRANTED IN PART, RESERVED IN PART, and DENIED IN PART, as stated in this Memorandum.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE